UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COURTNEY ANN SCHMIDT,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 15-cv-04855-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 23, 28

Plaintiff Courtney Ann Schmidt moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and § 1381 *et seq.* The Commissioner cross-moves to affirm. For the reasons stated below, the court denies Plaintiff's motion and grants the Commissioner's motion.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on June 26, 2012, alleging disability beginning on January 21, 2012. Administrative Record ("A.R.") 145-51, 152-58. The Social Security Administration denied Plaintiff's application at the initial and reconsideration levels on December 6, 2012 and June 28, 2013, respectively. A.R. 89-93, 97-102. On July 9, 2013, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 107-09. ALJ Regina L. Sleater conducted a hearing on June 5, 2014 at which Plaintiff testified, along with a medical expert and a vocational expert ("VE"). A.R. 40-84. After the hearing, at the ALJ's request, Plaintiff submitted a copy of nerve conduction and electromyogram (EMG) tests conducted on June 17, 2014 which revealed

moderate to severe right carpal tunnel syndrome and moderate left carpal tunnel syndrome. A.R. 83-84, 1057-59.

After the hearing, the ALJ issued a decision finding Plaintiff not disabled. A.R. 18-33. The ALJ found that Plaintiff had engaged in substantial gainful activity in March and April 2014 working part-time as a student aide, and noted that Plaintiff had last worked on the morning of the hearing. A.R. 23-24. The ALJ determined that Plaintiff has the following severe impairments: obesity, bilateral carpal tunnel syndrome, and right hip labrum tear. A.R. 24. The ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light work with certain limitations:

> Claimant has the [RFC] to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except for the following limitations: lift 10 pounds frequently, 20 pounds occasionally; stand/walk 4 hours in a[n] 8-hour day; sit 6 hours in an 8-hour day; occasionally climb stairs with bannisters and ramps; occasionally perform other postural except no climbing ladders, ropes, or scaffolds, and no crawling; occasional reaching, grasping, twisting, and gross and fine manipulation; no work around hazards such as unprotected heights or industrial machinery; and avoid concentrated exposure to industrial vibrations.

A.R. 28-29.

The ALJ relied on the opinion of the VE who testified that an individual with such an RFC could perform other jobs existing in the economy, including Plaintiff's past relevant work and current work as a "teacher aide II." The ALJ thus concluded that Plaintiff is not disabled. A.R. 32-33.

The Appeals Council denied Plaintiff's request for review on August 28, 2015. A.R. 1-7. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II.    THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable

2

physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

1   claimant is disabled.

2        20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 404.1520; *Tackett*, 180 F.3d at 1098-99.

3   **III.    FACTUAL BACKGROUND**

4        **A.  Plaintiff's Testimony**

5        Plaintiff is a 32 year old woman (29 years old on the day of her hearing) who lives with her

6   two children, sister, and nephew.  A.R. 43.  She completed three years of college.  A.R. 70.

7   Plaintiff's children, ages 6 and 2, have had medical problems; according to Plaintiff, her six year

8   old was born with craniosynostosis and had full skull reconstruction at six months of age and her

9   two year old has undergone surgery for laryngomalacia.  A.R. 43.  Plaintiff testified that she had

10  been treated for depression and saw a therapist from February 2012 until June or July 2012, when

11  she could no longer afford treatment.  A.R. 57-58.  She further testified that she "find[s] [her]

12  anxiety is worse than any depression," stating, "I'm relatively happy.  Besides the pain and

13  everything internally, I feel that the anxiety is the worse part."  A.R. 59.  She discussed her anxiety

14  with her doctor, Dr. Gabiola, who prescribed medicine, but Plaintiff only took the medication for

15  two months due to the side effects.  A.R. 59-60.  Plaintiff testified that when she feels "anxiety

16  coming on," she tries to do "physical work throughs," such as slow breathing, taking warm baths,

17  and trying to "self-sooth[e]."  A.R. 60.

18       Plaintiff testified that her "vision comes and goes."  A.R. 61.  Plaintiff testified about pain

19  in her hips, stating "it hurts to get up, it hurts to stand up, [and] it hurts to walk."  A.R. 62.  She

20  testified that all of her joints hurt, and that she sometimes needs assistance to stand up from the

21  couch due to the pain.  There have also been occasions when she has had to crawl because she

22  could not stand up to walk.  According to Plaintiff, her vision changes "throw [her] off" and cause

23  her to lose her balance and fall down.  A.R. 63.

24       Plaintiff testified that she returned to work in August or September 2013, working as a

25  school crossing guard for a total of one hour per day.  A.R. 65-66.  She still works a half hour per

26  day as a crossing guard "off and on, depending on [her] energy level and if [she's] in pain," and is

27  able to use a long stick that enables her to rest or sit if necessary while working.  A.R. 66.  Since

28  February 2014, Plaintiff has worked at an elementary school as an instructional aide for a student

                                                 4

with special needs.  She works 4 to 4.5 hours per day, five days per week, and earns $19.50 per hour.  A.R. 64.  Plaintiff testified that she had last worked as an instructional aide the morning of the hearing.  A.R. 63.

In her position as an instructional aide, Plaintiff works with a seven year old child with autism.  She described the work as follows:

> Right now I take tallies and I am [sic] vocally tell her to sit.  And basically if she has an outburst I stand in front of her until the principal is able to come.

A.R. 69.  As to sitting and standing, she is "up and down," which she testified is helpful.  She is also able to take breaks if she is in pain.  A.R. 69-70.  At the end of a shift, Plaintiff feels exhausted and usually goes home to sleep before returning to her crossing guard job for half an hour.  A.R. 70.

Plaintiff testified that she believes that her pain keeps her from working, and that she believes that she could work if she did not have pain and problems with balance and walking. A.R. 70.  Plaintiff also has irritable bowel syndrome and has to use the restroom one to three times per four-hour shift.  A.R. 71.  She also testified that she experiences side effects from her medications, including dizziness.  A.R. 72.

**B.  Relevant Medical Evidence**

**1.  Dr. Wil B. Nelp, M.D.**

Medical expert Dr. Wil Nelp testified at the hearing.  Dr. Nelp summarized Plaintiff's records and noted that Plaintiff had had thyroid cancer, but that after treatment, the medical records "indicate that she most likely is cured of this illness" and that she now shows normal metabolism.[2]  A.R. 48-49.  He also noted that Plaintiff had complained of chronic arthralgia and discomfort in her wrist, thumbs, ankles, and knee, but testing had ruled out any autoimmune disease.  A.R. 50.

Dr. Nelp noted that the records reflected that Plaintiff was "quite active" prior to her second pregnancy.  At a June 26, 2012 exam, Plaintiff was in no distress and was markedly obese

---

[2] Plaintiff was diagnosed with thyroid cancer in 2012 and underwent a thyroidectomy in June 2012.  A.R. 360-63.

with a BMI in the 37 range.  A.R. 50-51.  Notes from an August 20, 2013 exam indicate that Plaintiff was "exercising on a bike daily and . . . walking one and a half miles for exercise three times a week."  A.R. 51.

Plaintiff visited an orthopedic hip specialist in October 2013 because of "persistent bilateral hip pain," and Dr. Nelp noted that following an arthrogram of the hip, the specialist concluded that corrective surgery of the hip "was to be considered" and might be helpful for her hip discomfort.  A.R. 52.  The surgery would require six to eight weeks of recovery, after which Plaintiff "would be fully ambulatory and the healing would be done," and that Plaintiff would then need physical therapy.  A.R. 52.

Dr. Nelp opined that Plaintiff did not meet or equal a listing.  A.R. 53-54.  According to Dr. Nelp, "from the physical point of view, [Plaintiff] would be able to function at least at the sedentary level."  A.R. 54.  He opined that she can stand and walk for two hours during the workday with usual breaks; sit for six hours; lift 10 pounds occasionally and less than 10 pounds frequently.  According to Dr. Nelp, due to Plaintiff's "difficulty in her wrists and hands," she can only occasionally engage in reaching and gross and fine manipulation.  A.R. 54.  He also opined that Plaintiff could "occasionally do ramps and stair[s]" and should avoid crawling, ladders, ropes, and scaffolds, all heights and hazards, and concentrated vibration.  A.R. 55.

### 2.  Dr. Julieta Gabiola, M.D.

On October 31, 2013, Plaintiff's treating physician, Dr. Julieta Gabiola, M.D., wrote a brief note on behalf of Plaintiff:

> [Plaintiff] has multiple physical and somatic complaints which prevents [sic] her from getting a meaningful employment.  She has disabling pain all the time.
>
> She has tried to look for a job but did not last long due to her pain and other symptoms.
>
> Her options, I suppose will be social security benefits.

A.R. 870.

Dr. Gabiola completed a physical residual functional capacity questionnaire on February 13, 2014.  A.R. 874-77.  Dr. Gabiola identified the following "clinical findings and objective

signs": "arthralgia, bone pain, blurred vision, acetabular labrum tear, hip cartilage defect disorder of pelvic region joint, papillary thyroid cancer BRAF positive, [irritable bowel syndrome], and osteoarthritis." A.R. 874. She also identified anxiety as a psychological condition that affects Plaintiff's physical condition. A.R. 874. Dr. Gabiola opined that Plaintiff's experience of pain or other symptoms is frequently severe enough to interfere with the attention and concentration needed to perform even simple work tasks, and that Plaintiff is "[i]ncapable of even 'low stress' jobs," since "[c]onstant pain and fatigue prevents long hours." A.R. 874.

Dr. Gabiola further opined that Plaintiff can sit for 30 minutes before needing to get up, and stand for 15-20 minutes before needing to sit down or walk around. A.R. 874-75. According to Dr. Gabiola, Plaintiff can sit for less than two hours and stand/walk for less than two hours total in an eight-hour working day with normal breaks, and needs to walk every 30 minutes for three minutes total during an eight-hour working day. A.R. 875. Plaintiff must also be able to shift positions at will from sitting, standing, or walking, and will need to take one to three unscheduled breaks of five to 20 minutes in duration during an eight-hour working day. A.R. 875. Dr. Gabiola opined that Plaintiff can occasionally lift ten pounds or less, and that Plaintiff has "significant limitations with reaching, handling or fingering." A.R. 875-76. She opined that in an eight-hour working day, Plaintiff can use her hands to grasp, turn, and twist objects 10% of the time, perform fine manipulations with her fingers 5% of the time, and reach with her arms 5% of the time. A.R. 876. Finally, she opined that Plaintiff would likely be absent more than four days per month as a result of her impairments. A.R. 876.

### 3. Dr. Dixit

Dr. Aparna Dixit, Psy.D., evaluated Plaintiff on October 13, 2012. A.R. 436-40. Plaintiff reported to Dr. Dixit that she is "able to perform most activities of daily living independently," including driving, performing simple household chores, preparing simple meals, dressing and bathing herself, and taking public transportation. In her leisure time, she watches TV, reads, listens to music, naps, works on the computer, socializes, takes care of her children, and eats at restaurants. A.R. 437.

Following testing, Dr. Dixit assessed a full-scale IQ of 83. A.R. 438. She diagnosed

Plaintiff with major depressive disorder NOS, and opined that Plaintiff had marked impairment in the ability to maintain adequate pace or persistence to perform complex tasks, adapt to changes in job routine, and interact appropriately with the public on a regular basis. A.R. 439. Dr. Dixit also opined that Plaintiff was moderately impaired in following and remembering complex/detailed instructions, maintaining adequate attention/concentration, withstanding the stress of a routine work day, maintaining emotional stability/predictability, and performing tasks requiring mathematic skills. A.R. 439-40.

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1094 (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. DISCUSSION

On appeal, Plaintiff contends that the ALJ erred in (1) weighing the medical opinions; (2) finding that Plaintiff could perform her past relevant work; and (3) finding Plaintiff not credible.

8

### A. The ALJ's Evaluation of the Medical Opinions

Plaintiff first argues that the ALJ erred in weighing the medical opinions. Specifically, she argues that the ALJ erred in giving reduced weight to the opinions of the medical examiner, Dr. Nelp, examining physician Dr. Dixit, and treating physician Dr. Gabiola.

#### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-

United States District Court
Northern District of California

examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### 2. Analysis

#### a. Dr. Nelp's Opinion

Dr. Nelp, the physician who testified as a medical expert at the June 2014 hearing, opined that Plaintiff "would be able to function at least at the sedentary level," and that she could stand and walk for two hours and sit for six hours during the workday with usual breaks. A.R. 54. Dr. Nelp also opined that Plaintiff could occasionally use ramps or stairs, never climb ropes or ladders or crawl, and engage in occasional reaching and gross and fine manipulation. A.R. 54. The ALJ gave "[s]ome weight" to his opinion, writing that Dr. Nelp's assessment was "too restrictive, given that he recognized that the record showed that [Plaintiff] was exercising 3 times a week." A.R. 32. The ALJ also notes that Dr. Nelp stated that Plaintiff would be able to do "at least sedentary work, suggesting that his assessment in his opinion is the least that [Plaintiff] should be able to do." A.R. 32.[3]

---

[3] The Commissioner appears to argue that the ALJ rejected Dr. Nelp's limitation to sedentary work, and explains why this was not in error. *See* Def.'s Mot. 4. The court notes that Plaintiff did not challenge this aspect of the ALJ's opinion, likely because Dr. Nelp did *not* specifically limit Plaintiff to sedentary work. Instead, he opined that Plaintiff "would be able to function *at least* at the sedentary level," A.R. 54 (emphasis added), a qualification that the ALJ explicitly noted in her opinion. *See* A.R. 32.

Plaintiff argues that the ALJ erred in failing to indicate in the opinion which parts of Dr. Nelp's opinion she accepted and which she rejected. She also argues that substantial evidence does not support the ALJ's decision to give Dr. Nelp's opinion reduced weight. Upon review of the record, the court concludes that the ALJ did not err with respect to Dr. Nelp's opinion. As to which portions of Dr. Nelp's opinion the ALJ accepted and rejected, the ALJ's RFC finding largely mirrors Dr. Nelp's opinion, with one exception. The ALJ rejected the portion of Dr. Nelp's opinion that Plaintiff could stand and walk for only two hours in a workday, instead finding that Plaintiff can stand and walk for four hours in an eight-hour day. The ALJ otherwise adopted all of Dr. Nelp's opinions regarding Plaintiff's postural and manipulative limitations as well as the preclusion on climbing, crawling, work around hazards, and exposure to vibrations. *Compare* A.R. 28-29 *with* 54-55.

As to the ALJ's rejection of Dr. Nelp's opinion that Plaintiff could stand and walk for two hours in a workday, Dr. Nelp is a non-treating, non-examining physician. An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. Here, the ALJ found that Dr. Nelp's assessment was "too restrictive, given that he recognized that the record showed that [Plaintiff] was exercising 3 times a week." A.R. 32. As discussed above, Dr. Nelp reviewed Plaintiff's medical records and specifically noted at the hearing that an August 20, 2013 treatment note stated that Plaintiff "is exercising on a bike daily and [is] walking one and a half miles for exercise three times a week." A.R. 51; *see also* A.R. 744 ("[s]he is exercising regularly on a stationary bike/spinning and walking 1.5 miles 3 times/week"). Elsewhere in the opinion the ALJ noted that Plaintiff's treatment records "indicate that she is capable of strenuous exercise." A.R. 31. For example, a treatment note from May 21, 2014, which was a few weeks before the hearing, indicates that Plaintiff "states she is burning 5000 [calories] a day (30 min swimming 45 min kick boxing . . . running around with kids"). A.R. 994 (May 21, 2014 treatment note). The court finds that the ALJ could reasonably conclude that the level and frequency of exercise in which Plaintiff was engaging did not support Dr. Nelp's opinion about how many hours Plaintiff could stand and walk in a workday, and thus did not err in rejecting this portion of his opinion.

### b. Dr. Dixit's Opinion

Dr. Dixit evaluated Plaintiff in October 2012 and diagnosed her with major depressive disorder [not otherwise specified]. Dr. Dixit opined that Plaintiff is markedly impaired in the ability to maintain adequate pace or persistence to perform complex tasks, adapt to changes in job routine, and interact appropriately with the public on a regular basis. A.R. 439. Dr. Dixit also opined that Plaintiff is moderately impaired in following and remembering complex/detailed instructions, maintaining adequate attention/concentration, withstanding the stress of a routine work day, maintaining emotional stability/predictability, and performing tasks requiring mathematic skills. A.R. 439-40. The ALJ gave Dr. Dixit's opinion "little weight" and did not assess any mental limitations in her RFC finding. A.R. 27, 28-29, 31.

Here, since Dr. Dixit's opinion was uncontradicted, the ALJ was required to provide "clear and convincing" reasons to reject the opinion. *See Lester*, 81 F.3d at 830. The ALJ offered several reasons for giving Dr. Dixit's opinion "little weight." The ALJ noted that Dr. Dixit assessed marked restrictions in certain areas, but that her examination was "a one-time evaluation and report that is inconsistent with [Plaintiff] only having had 3 sessions with a psychologist since her alleged onset date, and with [Plaintiff] not having any prescribed medication for her mental impairments." A.R. 31. The ALJ further noted that Dr. Dixit's report "appears to be based in large part upon [Plaintiff's] statements." A.R. 31. Plaintiff argues that these reasons do not constitute clear and convincing reasons to reject Dr. Dixit's opinion. However, the ALJ provided additional reasons for giving Dr. Dixit's opinions little weight elsewhere in the opinion, none of which Plaintiff discusses or addresses. Specifically, the ALJ wrote that Dr. Dixit's opinion was "based on a one-time examination and is not supported by the overall evidence of record, including [Plaintiff's] lack of mental health treatment, her testimony at the hearing that her anxiety is greater than her depression and that she uses self-soothing techniques . . . to control her anxiety, and her normal mental presentations when she goes in for doctor's appointments." A.R. 27. Moreover, there is support in the record for the ALJ's observation that Dr. Dixit's opinions appeared to be based largely on Plaintiff's statements. Dr. Dixit's report does not contain any behavioral observations that would support the opinions regarding marked and moderate

impairments. For example, Dr. Dixit states that Plaintiff's speech "was spontaneous, clear and coherent . . . Her thought process was goal directed, linear, and logical." A.R. 437. As to the testing process, Dr. Dixit noted that Plaintiff "was cooperative and invested adequate effort in the testing conducted today. She demonstrated mildly fluctuating attention and concentration." A.R. 438. Furthermore, Dr. Dixit does not cite any objective test findings to support the marked and moderate limitations. Rather, Dr. Dixit's report states that the supporting data for those opinions are "Distractibility" and "Depression." A.R. 439.

Upon review of the record, the court concludes that the ALJ did not err with respect to Dr. Dixit's opinion. As noted by the ALJ, the record reflects only three visits to a mental health provider in March 2012, around the time Plaintiff was awaiting test results related to her ultimate cancer diagnosis. A.R. 435. In an August 20, 2012 letter, the therapist with whom Plaintiff met for three sessions indicated that the "focus was on the intake assessment, as well as addressing immediate safety concerns," and that she did not complete a formal assessment. A.R. 435. There is no other evidence in the record indicating that Plaintiff needed or requested mental health treatment at any other time. The court finds that the ALJ reasonably concluded that the minimal amount of mental health treatment Plaintiff received was indicative that she did not have a serious mental health problem or associated functional limitations. *See, e.g., Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (holding that an ALJ is "entitled to draw an inference from the general lack of medical care" for claimed condition).

Moreover, Dr. Dixit cited to depression as the basis for several functional limitations, including Plaintiff's marked impairment in her ability to interact appropriately with the public on a regular basis. A.R. 439. However, Plaintiff testified that her "anxiety is worse than any depression" and that she is "relatively happy," *see* A.R. 59, contradicting Dr. Dixit's diagnosis of major depressive disorder. The ALJ noted Plaintiff's testimony on this point, as well as her testimony that she manages her anxiety with slow breathing, warm baths, and self-soothing. A.R. 27; *see also* A.R. 59. There is no other evidence in the record that supports Dr. Dixit's findings that Plaintiff is markedly impaired in several areas of mental functioning. The court finds that the ALJ provided adequate reasons supported by substantial evidence for rejecting Dr. Dixit's

opinion.

c.     **Dr. Gabiola's Opinion**

Dr. Gabiola, Plaintiff's treating physician, wrote a letter on October 31, 2013 stating that Plaintiff has "multiple physical and somatic complaints which prevents [sic] her from getting a meaningful employment," and that Plaintiff has "disabling pain all the time." A.R. 870.  In February 2014, Dr. Gabiola completed a physical residual functional capacity questionnaire in which she opined that Plaintiff was "[i]ncapable of even 'low stress' jobs." A.R. 874.  According to Dr. Gabiola, Plaintiff can sit for less than two hours and stand/walk for less than two hours in an eight-hour working day with normal breaks, and has significant limitations with reaching, handling, or fingering.  A.R. 875-76.  The ALJ gave Dr. Gabiola's opinions "less weight," explaining that even though more weight is afforded to the opinion of a treating source under Social Security Regulations, Dr. Gabiola's opinions "are not well-supported and not consistent with the other substantial evidence of record," and not supported by her own treatment notes and clinical observations of Plaintiff.  The ALJ offered examples of such inconsistencies.  A.R. 31-32.

Dr. Gabiola's opinion that Plaintiff is incapable of working was contradicted by Dr. Nelp, who opined that Plaintiff is capable of functioning at least at the sedentary level.  Accordingly, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence to discount Dr. Gabiola's opinion.  *Lester*, 81 F.3d at 830.  The court finds that the ALJ satisfied this standard.

As to the October 31, 2013 letter, the ALJ noted that Plaintiff saw Dr. Gabiola on the same date "and requested a letter for her social security lawyer stating that she is unable to work," and that the letter "appears to be merely restating what claimant requested at her appointment."  A.R. 31.  Notably, Dr. Gabiola surmised in her letter that "[Plaintiff's] options, I suppose will be social security benefits."  A.R. 870.  The ALJ also wrote that the October 31, 2013 opinion appeared to be based on Plaintiff's subjective allegations, and not based on Dr. Gabiola's clinical observations, and referenced the treatment notes from Plaintiff's October 31, 2013 visit in her opinion.  A.R. 31-32; *see* A.R. 848-53 (Oct. 31, 2013 treatment notes).  On that date, Dr. Gabiola noted that Plaintiff "comes in with persistent multiple somatic complaints," and that she had been discharged from the

14

hospital's rheumatology department "attesting to NO rheumatological condition to explain" her symptoms. A.R. 848. The notes also state that Plaintiff "[w]ants a letter to give to her social security lawyer that she is unable to work. And that she tried and was let go." A.R. 849; *see also* A.R. 852 ("Wants a letter address[ing] her inability to hold any meaningful employment."). However, Dr. Gabiola's clinical observations on that date reflect normal findings with respect to Plaintiff's systems, including her musculoskeletal system and extremities. A.R. 851. The only diagnoses reflected on the treatment notes were Plaintiff's thyroid cancer and anxiety. A.R. 849. The ALJ thus reasonably concluded that Dr. Gabiola's opinion was based on Plaintiff's subjective complaints and not Dr. Gabiola's clinical observations, given that the contemporaneous treatment notes did not reflect any objective findings to support the opinion that Plaintiff was unable to obtain "meaningful employment." *See, e.g., Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding that ALJ properly rejected treating physician's opinion because it was "based almost entirely on the claimant's self-reporting," and lacked any objective findings to substantiate the doctor's opinion).

As to Dr. Gabiola's February 13, 2014 opinion, the ALJ noted that the restrictions assessed in the residual functional capacity questionnaire were "in marked contrast" to Dr. Gabiola's February 10, 2014 examination of Plaintiff and her clinical observations. A.R. 32; *see* A.R. 916-19 (Feb. 10, 2014 treatment notes). The treatment notes from Plaintiff's February 10, 2014 examination reflect that Plaintiff complained of being "[e]xhausted all the time," was experiencing upper chest pain, ankle pain, and hip pain, as well as "weakness and on going [sic] fatigue." A.R. 916. Plaintiff's diagnoses from the October 2013 exam, thyroid cancer and anxiety, were unchanged and there are no new diagnoses indicated. A.R. 916. As with the October 2013 exam, Dr. Gabiola's clinical observations reflect normal findings, including with respect to her musculoskeletal system and extremities. A.R. 918-19. Dr. Gabiola found full 5/5 strength bilaterally in Plaintiff's upper and lower extremities, normal range of motion, no joint swelling, and negative findings for tenderness. A.R. 918-19. Under the space for "Assessment and Plan," Dr. Gabiola noted that for Plaintiff's "[g]eneralized pain[,] [w]eakness [and] fatigue," the recommendation was "[e]ncourage increasing activities." A.R. 919. Treatment notes from other

physical exams reflect Plaintiff's ongoing complaints of pain while concurrent examinations consistently reveal minimal abnormalities. *See, e.g.*, A.R. 563 (Feb. 21, 2013 treatment note), 565 (Mar. 5, 2013 treatment note), 566 (Jan. 8, 2013 treatment note), 569 (Mar. 26, 2013 treatment note), 573, 576 (Apr. 15, 2013 treatment note), 927 (Mar. 13, 2014 treatment note), 934 (Apr. 16, 2014 treatment note). The court concludes that the ALJ's finding that Dr. Gabiola's opinion was unsupported by the objective clinical findings is supported by substantial evidence. *See Turner*, 613 F.3d at 1223; *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings" (internal citation omitted)).

Plaintiff argues that the ALJ's determinations regarding Dr. Gabiola's assessments were not supported by substantial evidence because her opinions were based not only on her findings, but on all of the evidence in the record, including the reports of consulting examining physicians. Mot. 11. She argues that because Dr. Gabiola referenced Plaintiff's right hip labrum tear and hip cartilage defect in her February 2014 opinion, she must have considered Plaintiff's September 5, 2013 MRI and the October 31, 2013 and November 7, 2013 reports of Dr. Zackary Vaughn in which he discussed the MRI results and Plaintiff's likely left hip labral tear. *See* A.R. 748-49, 854-55, 866-67. However, Dr. Gabiola did not cite any of this medical evidence in her opinion. In fact, other than a list of diagnoses, Dr. Gabiola cited no evidence for her February 2014 opinion. Social Security regulations provide that "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). In sum, the court finds that the ALJ provided "specific and legitimate reasons" supported by substantial evidence to discount Dr. Gabiola's opinion.

**B. The ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work**

Next, Plaintiff argues that the ALJ erred in determining that Plaintiff could perform her

past and current job of teacher's aide as actually performed.[4]

At step four of the disability determination process, claimants bear the burden of showing that they can no longer perform their past relevant work. *Pinto*, 249 F.3d at 844 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). Nevertheless, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." *Id.* SSR 82-62 states, in relevant part:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4 (S.S.A. 1982). "The Social Security Regulations provide that the ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto*, 249 F.3d at 845). Plaintiff argues that the ALJ failed to make the second required finding of fact as to the physical and mental demands of the past position of teacher's aide.

The ALJ's decision states in relevant part that,

> [Plaintiff] is capable of performing past relevant work (and current

---

[4] Plaintiff also challenges the ALJ's determination that Plaintiff could work as a teacher's aide as the job is "generally performed." Mot. 12, 13-15. However, the ALJ found only that Plaintiff is "able to perform [the position of teacher's aide] as actually performed." A.R. 33. She did not make any findings about Plaintiff's ability to perform the position of teacher's aide as generally performed and was not required to so find under the regulations. *See* 20 C.F.R. § 404.1560(b)(2) (the ALJ will determine whether a claimant can do past relevant work "either as the claimant actually performed it or as generally performed in the national economy."); *see also Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (the Ninth Circuit has "never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed.").

> work) as a teacher aide II.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity. . . . [i]n comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed.

A.R. 32-33.  Plaintiff argues that this finding is not supported by substantial evidence because the ALJ never questioned Plaintiff about the physical and mental demands of the job of teacher aide II.  According to Plaintiff, "[t]here was no testimony upon which to make any kind of finding as to what the actual standing, sitting, lifting and carrying requirements of the job were."  Mot. 13.  Further, even though the ALJ's RFC contained a limitation as to Plaintiff's ability to reach, grasp, twist, and perform fine manipulation, Plaintiff argues that the ALJ never asked Plaintiff about the reaching requirements of her current position as a teacher's aide.  *Id.*

At the hearing, Plaintiff testified about her position working as an instructional aide for a seven year old child with autism and described the job functions.  A.R. 69.  When asked about the amount of sitting and standing she does during a four hour shift, Plaintiff testified, "[w]e're up and down.  So that helps me," and that she is able to take a break if necessary.  A.R. 69-70.  She also testified that "if there is an issue," she can ask one of the other aides to "actually substitute [for] [her]" if necessary.  A.R. 70.  The VE listened to Plaintiff's testimony and stated, "[s]he's currently working as a teacher aide with a special education student.  The work as she described it was done at the light level, your honor."  A.R. 76.  The VE further testified that an individual with Plaintiff's RFC could perform Plaintiff's current position, explaining, "[t]eacher aide, you're not always on your feet but there's a necessity, especially in special education, where you might be a little more demonstrative . . . [b]ut normally sitting down, squatting down, on a stool when the child is being attentive to what they're supposed to be attentive to, that works."  A.R. 81.  The ALJ cited the VE's testimony in her opinion, noting that "[t]he vocational expert testified that a hypothetical individual with [Plaintiff's] age, education, and past relevant work experience would be able to return to [Plaintiff's] past relevant work as a teacher aide II and, in fact, she performed that work during the last school period."  A.R. 33.

The court finds that the ALJ did not err with respect to her findings regarding Plaintiff's current job as a teacher's aide.  The ALJ considered Plaintiff's own testimony about her current

work as a teacher's aide as well as the VE's testimony about Plaintiff's ability to perform her current work. Both were permissible sources of information to define Plaintiff's past and current relevant work as actually performed. *See Lewis*, 281 F.3d at 1084. Plaintiff testified that she had worked as a teacher's aide on the day of the hearing, and this fact is substantial evidence supporting the ALJ's conclusion that she could work as a teacher's aide II as actually performed.

## C. The ALJ's Credibility Determination

Plaintiff next challenges the ALJ's determination that she was not fully credible.

### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citation omitted). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281

19

(citations omitted).  First, the ALJ must determine whether or not there is a medically

determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20

C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces

medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to

fully corroborate the alleged severity of" the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345

(9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is

malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the

claimant's testimony.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (rejecting

Commissioner's challenge to "specific, clear, and convincing" legal standard for rejecting

claimant's testimony in the absence of malingering).

### 2.  Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely credible for the

reasons explained in this decision."  A.R. 27.  The ALJ gave several reasons for failing to fully

credit Plaintiff's credibility.  Plaintiff challenges only one of the reasons offered by the ALJ;

namely, that even though the June 2014 nerve conduction and EMG tests supported a finding of

bilateral carpal tunnel syndrome, Plaintiff had been referred for such testing in 2012 and had failed

to follow through.  According to the ALJ, the failure to comply with the recommended diagnostic

testing "may indicate [Plaintiff's] carpal tunnel-related symptoms were not as severe as she

alleges."  A.R. 31.  The ALJ also noted that despite Plaintiff's allegation of disabling pain, she

was not taking any strong pain medications.  A.R. 31.

Plaintiff argues that these reasons were insufficient to support the ALJ's credibility

finding.  While acknowledging that the ALJ may consider "unexplained or inadequately explained

failure to seek treatment or to follow a prescribed course of treatment" as a factor in weighing

credibility, *see Tommasetti*, 533 F.3d at 1039, Plaintiff argues that the ALJ never asked her why

she had not undergone testing until 2014.  Curiously, she asserts that "[w]e do not know why

because the ALJ never asked her," and offers no explanation for her failure to obtain testing earlier. Pl.'s Mot. at 15. Plaintiff was represented at the hearing and her counsel had the opportunity to raise this issue to the ALJ but did not do so. The court finds that Plaintiff's still-unexplained failure to follow through with recommended testing was a permissible reason to discount Plaintiff's testimony. *See Tommasetti*, 533 F.3d at 1039.

Moreover, the ALJ provided a number of other reasons for discounting Plaintiff's credibility, none of which Plaintiff addresses or challenges. First, the ALJ noted that Plaintiff had sought treatment for "many different complaints," but that her medical workup for many of the ailments "has been normal, with no objective medical basis for her complaints." A.R. 30. For example, Plaintiff asserted at the hearing that she continues to have problems with her thyroid, even though her doctors have stated that her thyroid is not the cause of her symptoms. A.R. 30; *see also* A.R. 707 ("your symptoms are not due to your thyroid"). The ALJ also identified inconsistencies between Plaintiff's alleged limitations and the record evidence, stating Plaintiff's "activities of daily living do not support the extent of her allegations of pain," and noting that Plaintiff was able to work at substantial gainful activity levels in the two months prior to the hearing; is capable of strenuous exercise; cares for her two children, both of whom have serious medical conditions; and is able to perform simple household chores, drive, prepare meals, and handle her personal care. A.R. 30-31; *see also* A.R. 744 (Aug. 20, 2013 note that Plaintiff "is exercising regularly on a stationary bike/spinning and walking 1.5 miles 3 times/week, and she cares for 2 small children"), 994 (May 21, 2014 note that Plaintiff "states she is burning 5000 [calories] a day (30 min swimming 45 min kick boxing . . . running around with kids"). Finally, the ALJ noted other inconsistencies in Plaintiff's statements, including statements about the level of support her family provides. A.R. 31; *compare* A.R. 997 ("[s]he does not speak with her sister nor with her parents. She states that her parents are not supportive of her.") *with* 271 (third party report stating "Her family and friends [help Plaintiff care for other people]. Her sister does bed time and baths."). The ALJ considered all of the above factors in concluding that Plaintiff's testimony was not fully credible. The court finds that the ALJ provided specific, clear and convincing reasons supported by substantial evidence for her decision.

United States District Court
Northern District of California

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied.  The

Commissioner's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: June 6, 2017



Donna _____
United States Magistrate Judge
Judge Donna _____